Our next argument for today is 25-1121, Socket Solutions v. Import Global. Mr. Johnson, please proceed when you're ready. May it please the Court. Timothy Johnson for Import Global. Your Honors, this is an appeal from a preliminary injunction based in part on the erroneous construction of two terms, backplate and pin, in a patent related to an electrical wall outlet. The district court's construction of backplate is subtle but erroneous rewrite of the claim. I'm sorry to interrupt you, but I just want to ask you a sort of preliminary question about the status of this case. My understanding, I think, is that the judge stayed the injunction, the preliminary injunction? By agreement of the parties, the case has been administratively stayed pending the outcome of this appeal. And that was like a year and a half ago, right? Yes, Your Honor. And the injunction was stayed, though? No, Your Honor. The injunction has been in place this entire time. Oh, the injunction is in place, but the case has stayed? Yes. Okay. Thank you. I'm sorry to interrupt. So the district court's construction of backplate is a subtle but erroneous rewrite of the claim, and the district court's construction of the term pin transforms it from a structural component of the claim into a means plus function element as the final construction with no reference to any corresponding structure from the specification. It's essentially the reverse of what is required by Section 112F. Okay. If we were to agree with you, I know you want to get into both of them, and I'll let you do that, but I just want to know if we were to agree with you on one or both of the claim construction issues and conclude they're erroneous, what is the result for this case? Clearly, it's a vacating remand for the district court to reconsider the question of likelihood of success, but is there any kind of stipulation by the parties? Like, we often have this in, you know, infringement situations. Oh, well, if the claims are construed this way, we stipulate to infringement. If the claims are construed this way, there's no proof of infringement. Is there anything between the parties regarding either of these two constructions and what they foretell for the infringement analysis? There is no stipulation between the parties as to that, but it's the defendant's position that if we had one of those. Yes, right. All right. Go ahead. Continue. So even in the court below, socket solutions define this invention as pretty simple. It's a socket, a wall socket cover with an extension cord sort of extending down from it, and you have a power strip. So basically, you get to cover the wall socket and then continue to use it through a power strip. And then Claim 19 also is pretty simple, and the structure of Claim 19 has two primary elements. First, it has a cover, and then it has an electrical cord. Those are the two primary elements. Then the cover was actually defined by the court as a structure that encloses the electrical components and hides a standard indoor electric wall outlet. Then the claim further defines the cover by adding two components, a front plate and a back plate. Those are both components of the cover. And then, again, the front plate is construed properly, given a positional construction that's anchored to the cover. It's construed as a portion of the cover that is visible when installed on the wall outlet. It's anchored to the cover, and it's referenced to the wall outlet. So that construction, again, is correct. However, when we got to the back plate, the court made this subtle change in that it did not construe the term back plate with reference to the overall cover. Instead, it subordinated back plate to the front plate, as basically saying any plate that's opposed to the front plate. And then it also added in that it has these electrical prongs. Okay, I guess, can I just follow up on the Chief's question with respect to this issue and with respect to the PIN? I guess I'm a little unsettled. One part, you presented this claim construction, the one you're talking about now, and the other side presented the one adopted by the district court. For which term, Your Honor? I'm sorry, for back plate. Yes, Your Honor. So can we fairly conclude from the record that that would dislodge the judge's finding, that that was determinative of and therefore would dislodge the judge's finding of a likelihood of success on the merits? Yes, Your Honor. Because? Well, I'll ask your friend the same question. Go ahead, because. I'd like to hear the because. Because even in the photos, the back plate that is on the accused product, it has none of the additional requirements that the claim puts on back plate. It at first claims a back plate as a component of the cover, and then the claim goes on to add additional limitations to the back plate, which is it has the electrical prongs and then certain not only positional but dimensional limitations. Your position is that the proper construction would reflect that it needs to be against the wall, the back plate. Correct. Right. Wait, wait, wait. So where do you find that additional requirement that it be married to the wall? It's less of a requirement that it be married to the wall. It's more of sort of giving it the reference. Since the front plate was referenced as being facing away from the wall outlet, the opposite of the back plate would be the other side. I guess my question is where are you finding that? Is it just you're just inferring because you think it was a proper front plate construction, that therefore sort of the spirit of that means that the back plate, I'm missing something, where you find that the back plate needs to have as an essential aspect of it the wall? It's in the claim as the component of the cover, the preamble to the overall apparatus, in the case that this is installed in a wall socket. Now, if it's not installed in a wall socket, it still has a front and back, but it's just sort of to illustrate which side of the cover is the back because that's the one that's going to be, it has the electrical prongs, so those are the prongs that go into the wall outlet. And again, the claim defines the front plate and the back plate as the external portions of the cover. That's what the word back does. It's not just a first plate or a second plate. It is a back plate, and the term back has specific meaning from the specification. So you mean thinness is involved in this too? Exactly, because to measure the thickness of the cover, you measure, according to the specification, the distance from the front plate to the back plate. But that, I'm with you all the way to this point, but then you're adding into that that the back plate must be, there must be nothing between the back plate and the wall. It has to be right up against the wall, and I don't know where you're getting that. And again, it may be, it's less of a limitation that it has to be up against the wall. It's basically a way of showing which side of the cover is the back. But is your construction, as I understand it, back plate means a component of the cover opposing the front plate? No, Your Honor. That's their construction? That's their construction. All right. So yours means the portion of the apparatus closest to the wall outlet when the apparatus is plugged into the wall? Yes, Your Honor. Okay. So why is this closest to the wall outlet thing part of the construction? I mean, I totally see Judge Seaborg's point, front plate, back plate, makes sense. But how does that have anything to do with closest to the wall? It's only just to reference it as being the external side of the cover. And since this is the only way you can plug it into the wall is using the back with the prongs, it's just simply to reference it. It could simply be the external plate or the external back because it is the back of the cover. And so it is the external exterior of the cover. And that's all we're trying to illustrate because the court did the same thing with front plate. So just to have consistency, that's why it was. I mean, the significance for you is that you have an additional plate in your accused product, right? Well, we do have a back plate that does not have the electrical prongs on it. And so if the concern is that, you know, referencing it to the wall as being the closest plate, then really the construction is it's just the external plate of the cover. It's the back of the cover. Not some internal plate within the cover. I mean, the cover has a front and a back. I mean, it's everywhere in the specification. That's how it teaches. The ham in the sandwich is not a piece of bread.  All right. Okay. So can I have you pivot? I want you to address irreparable harm. I know you're arguing about PIN. I want you to address irreparable harm. Can I just ask a question about PIN? Of course. The judge didn't adopt either one of your constructions on PIN. It went on a means plus function thing. But the thing about your construction, and this goes to how we decide this case and how far we go, I'm a little troubled. I don't see where you're getting PIN means a mechanical system. Because it strikes me that PIN is just a component for making an electrical. So where do you get mechanical system? And is there a difference, for purposes of our analysis on claim construction, of mechanical system versus structure or a component, which I think parallels more closely your friend's construction. So that's why I'm wondering what the consequences are and how significant it is. I think the problem is sort of the dearth of examples in the specification. It's just they have one example. Well, first, is there a distinction that matters if your construction is amended from means a mechanical system versus, say, means a component for making an electrical connection between the wire and the prong? The mechanical connection is based upon not only the specification, but the fact that it is attached or fastened or attached to the wire. So that has to have some kind of a physical connection. And then it's also attached or fastened to the prong.  It's a component, yes. But you say mechanical system, it makes it sound like it's like a whole car engine. You know, like it's not a whole system, like the fuel injection system, which has multiple components. It's a single component. Yes. Unitary thing. And the mechanical part was meant to capture sort of the clasping, where you have to attach these things with a mechanical force as opposed to, you know, some chemical. I understand your argument. You're effectively saying the pin has to mean something.  And your argument is soldering is not consistent with the idea that you have to have something, whatever that pin may be, right? Yes, Your Honor. Okay. All right, can we now, is it okay if we go to irreparable harm? Yes. Can you touch upon irreparable harm? And in particular, I want to bring up an issue that neither party really meaningfully addressed, but I feel like is something that we ought to confront. I don't know. Maybe you'll say we don't have to confront it. But both parties, the magistrate judge and the district court judge, both at least in a single sentence indicated that you get a presumption of irreparable harm if there is a likelihood of success. And I'm a little anxious about that statement, because both of the cases that are cited by the magistrate judge and by the district court judge preceded the Supreme Court's eBay decision or this court's decision in Bosch. So can you start by addressing that? And then my next question, like, is there such a presumption? And then my second question would be, did that presumption affect the irreparable harm analysis that either the magistrate or the district court judge articulated? Please, go ahead. My two answers for that is, no, there is no presumption. And, yes, it did affect, because I believe the district court did make that assumption or did address like the irreparable. Well, start with why there is no presumption, because I didn't see that in your blue brief. I didn't see you argue that the district court misstated the law anywhere in your blue brief. And I think we focused on the district court's admission that the only evidence with the declaration of the inventor and the owner of the company that was brought in was just conclusory declarations. And the magistrate actually said- Does that have anything to do with presumption? Well- How in the world are we morphing your argument about conclusory expert testimony into there's a problem with the law the way the court stated it? Well, the presumption, and if you can look at the- Sorry. The magistrate judge did in- Let's see if I can grab it real quick. Where she- In Appendix 47, the magistrate judge does get into the law and then essentially does presume certain things about- That there is a likelihood of infringement that somehow having a competing product out there which is cheaper is going to harm, and therefore that's irreparable harm. And that money damages would be inadequate. I'm sorry. You're on page what of the appendix? 47. It says irreparable harm is preserved when a clear showing of patent validity and infringement has been made. Is that what you're referring to? Appendix 47. It's Appendix 47. It's the last sentence of the second full paragraph. Yes. Sorry, Your Honor. Thank you. Okay. Do you have anything further? Well, but the court does say that, that there is a presumption, and- Okay. Why don't we- You're out of all your time, you're out of all your rebuttal time, and you're over. So we're going to hear from the other side. I'm going to restore two minutes of rebuttal time. Thank you, Your Honor. Mr. Rice. May it please the court, good morning, Your Honors. Let me start with Chief Judge Moore's question on irreparable harm, because I think I have a direct answer to that. The court did not rely on the presumption. The presumption would have been necessary only if there had been no evidence on either side. Then the presumption would have been necessary to shift the burden from the movant, my client, and the PI to the defendant. However, there was ample evidence to support the irreparable harm, and the evidence was identified by the magistrate judge in some detail. On the appendix page that opposing counsel referred to, there was evidence on appendix pages 47 and 48. The magistrate judge went through the standard, identified the types of harms that qualify under this court's precedent as irreparable harms, then went through the evidence that — What does footnote 2 mean? I couldn't quite — Footnote 2 — I mean, she says she's giving less weight. They agree that the assertions of market share loss lack meaningful substantiation, and that should be afforded less weight. However, defendant did not prove contrary evidence on this point, on this posture. So who has the burden to do what in the circumstance of defining irreparable harm? So assuming there's no presumption, the appellee in this case, the movant, the PI movant, has the burden to establish irreparable harm. We presented evidence of irreparable harm in many forms, clicking many of the boxes that the Federal Circuit has identified as the type of harms that are recognized as irreparable harms. The relevant part of the background to that footnote, Your Honor, is that in the PI briefing, the defendant did not address irreparable harm at all. It elected to address only likelihood of success and expressly stated that it would not address irreparable harm. We had a PI briefing, then a PI hearing. At the hearing, we presented evidence. We entered into the record evidence to support our preliminary injunction facts, including the irreparable harm facts. At the hearing, the defendant objected to one point of evidence, and that was the market share. One of our arguments was that there was irreparable harm because the infringement was reducing the patent owner's market share. The objection was there was no quantification of what the market share was as between the patent owner, the defendant, and other competitors in the market, and therefore there was insufficient support. There's a lot of issues. Do you mind if I try and summarize and you tell me where I get it wrong? Absolutely, Your Honor. Here's my summary. Even if the district court erred in the statement of law regarding this presumption, which, by the way, I think they did, they didn't apply that presumption. They went on and made fact findings based on four separate categories of evidence, each of which would independently support your irreparable harm argument. Those are fact findings that were made separate and apart from any presumption. And on top of that, the other side said below that they were not challenging at all the irreparable harm arguments that you've made. Does that summarize it? You summarized it perfectly, Your Honor. Okay. So why don't you go on and do your claim construction argument. Absolutely. Oh, of course. On the final point where you agreed that it wasn't the defendant never raised irreparable harm below, is that what your statement is? Defendant never addressed it in the briefs and never presented any rebutting evidence. What about 8 Appendix 17, which is the district court's opinion, I believe, in the middle of the second full paragraph? It says, in short, I mean, that's all. The defendant now objects to the R&R affording plaintiff the presumption of irreparable harm. In short, defendant contends that Judge Lewis made no such finding, so plaintiff is not entitled to the presumption. Isn't that a challenge to the presumption issue? Or am I misunderstanding what I'm reading? Okay. That objection goes to the presumption issue. What they're saying is because, in their briefs, they focused solely on the likelihood of success prong of the preliminary injunction analysis, and because, in their view, they defeated the likelihood of success, therefore, they're objecting to the presumption of irreparable harm, the issue we were dealing with a moment ago, which pre-eBay would have arisen, a presumption of irreparable harm would arise if you have a strong likelihood of success. They're saying there was no likelihood of success, so there should have been no presumption of irreparable harm. But they presented that argument, but they didn't present any evidence, and they didn't object to any of the other categories of irreparable harm on which the patent owner provided evidence. Okay. Can you move on to your claim construction arguments? Yes, Your Honor. The backplate argument is... Let me just have you start with PIN, because I don't see how this PIN is a 112-6. I mean, that's like mind-blown. So how could this PIN be a 112-6? It's not a 112-6, Your Honor. Our view is... How can we affirm the district court's analysis? It is... Okay. The term PIN in the claim is a structural term. The question is whether a structural term in a claim can be given a purely functional definition. Our position is it was appropriate for the court to define PIN as it did with a functional definition because the PIN itself is a structure. 112-6 is a claim drafting rule that precludes a party from inserting into the claim itself purely functional language without any structure to go with it. In that situation, 112-6 or 112-F kicks in, and the claim construction must incorporate structures from the specification to supplement the purely functional claim language. In this case, everyone agrees that a PIN is a structure. There's no question about that. The question is how do you define this structure? The structure was defined by the district court in purely functional terms. It's perhaps a little unfortunate that the district court used the word means. I don't see where this... Where's the function in the claim? Where's the function in the claim? The function of PIN is not... The claim. ...is not recited in the claim. Okay, so we've got a structural element in a claim with no function requirement in the claim. I mean, it basically fails on all accounts. It doesn't have means. It doesn't have a function. It's like it can't be 112-6. So if it's not 112-6, then the patentee is not limited to the structures disclosed in the spec. Correct. Any skilled artisan could identify what constitutes a PIN in this area. Correct. It's our position as the patent owner, as the plaintiff, that the PIN is not limited to a particular type of PIN or a particular shape. You may not lose this argument on remand, but I don't see how we affirm the claim construction when the district court treated it as a functional 112-6 claim construction. I don't have any clue how our correction of the district court's claim construction errors may affect the outcome of the infringement or likelihood of success on infringement analysis because that's not presented to me. All I know is I have a claim construction that seems wrong. Well, so the court construed the PIN to incorporate the function that both parties agreed was the function of PIN. The PIN is a connector that connects the electric wires to the electric prongs. It's disclosed in the specification that this is the function of the structure that is called PIN. That is the electrical PIN. It has a physical component and an electrical composition component. It's got to be composed of material that can transfer electricity from the PINs to the prongs. So we know what the PIN is in the preferred embodiment. What I don't understand is you seem to be saying, on the one hand, everybody agrees that PIN connotes a structure of some kind, but then the construction doesn't have any structure to it. So, I mean, you seem to be agreeing with what PIN should connote, but then the construction doesn't address it. I think the Hill-Rom case is instructive on this issue. The Hill-Rom case identifies the principle that you can have a structural claim limitation, have a purely functional definition, and that does not convert the structural term into a 112.6 means plus function. And it pointed out that certain terms are best described, best defined by their function. It gives examples. In the Hill-Rom case, it was a data link. And the question there was, does it have to be a wireless data link or can it be a wired data link? And they defined data link as anything that links data, basically. It didn't have a specific structural limit beyond that, and that was considered okay. The court addressed the argument that this converted data link to a means plus function, and it rejected that argument, saying no, some terms are best defined purely by function. It gave examples. For example, container. Container, it doesn't have to be a particular shape. It doesn't have to be a particular size. It doesn't have to have particular material. But we all know that a container is a structure. And so if you define a container as that which contains, that's a purely functional definition, yet it's appropriate for that term. Our position is the court did not err in defining PIN as a structure or a means, a structure, something that connects the electrical pins to the electrical prongs. It physically connects them and connects them electrically. There is nothing in the patent. But then how can you have substantial likelihood of success on the merits if the accused product doesn't have any structure to it, just as I understand it, a soldering approach? How can it be substantially likelihood that there is infringement? Because solder is a structure, Your Honor. It is a physical thing that physically connects the electrical wires to the electrical prongs. It electrically connects the electrical wires to the electrical prongs. How are you finding that the solder is a structure? I don't follow you. Solder is a structure. I think maybe the confusion is that it has a specific shape. It can take different shapes. It doesn't have a fixed or uniform shape. But it is a structure. It is a thing. It is a physical thing. And more importantly for our- I just don't understand this. I mean, a pin is a known thing to a skilled artisan in this field. Solder is not a pin. Maybe you've got an argument under DOE, but solder is not a pin. I mean, that's just silly. That's silliness. A pin is a known structure to a skilled artisan. A solder is a bunch of goo that just connects to electrical things. It forges an electrical connection. It's a bunch of melted metal. That's it. It's not a pin. But it might be. Maybe you have a DOE argument. I understand your point, Your Honor. There was no expert testimony from- Melted goo? Nobody came along with melted goo?  Go ahead. I want you to hit on backplate. Hit on backplate because I feel like you're running out of time. Okay. I see, Your Honor. Yes. All I'll say is that in our position is that the uniformity of shape is not required for a pin. It is a thing. And I understand you've got views on that. I'll move on to backplate. Backplate, the simple issue is the preferred embodiment in the patent was a two-plate device. It had one front plate, one back plate. The cover has to have a front plate and a back plate. The front plate is in front of the pins and wires. The back plate is behind the pins and the wires. That's what the claim requires. That's what the patent discloses. In the preferred embodiment, the back plate happens to go against the wall because there's only one plate behind the pins. In the accused product, there are two plates behind the pins. Our position is by adding an extra plate, you don't change the nature of the infringement. Just to give an example that we used in the brief, which I think is telling, if you take the preferred embodiment of the patent, the two-plate structure, the back plate with the pins, the wires, everything, just as it's depicted in the illustrations and in the preferred embodiment, and you add a functionless thin plate to the back under the appellant's claim construction, you would dispossess the back plate of its back plate status, and the new decorative rear plate would now be called the back plate, and therefore they would get out of infringement. Our position is you can't add a non-functional, trivial structure onto an infringing product to avoid infringement, and that is what they, our position is that's what they did with the accused product. They had a back plate that opposed the front plate. It had the pins on it. It had the wires on it, functioned just as in the patent, and then they put another plate on back and said, now we don't infringe, and that's incorrect, Your Honor, and we believe that the district court should be affirmed. You can have in mind a particular patent and design your product not to infringe. Certainly can design around, Your Honor, but the general rule is you can't design around by adding something, adding a structure to a product that infringes an apparatus claim. There is exceptions to that, but this case is not one of those exceptions. Okay. Mr. Johnson.   We'll give you a minute for rebuttal time. Thank you. Thank you, Your Honor. I'll quickly talk about the back plate again. The concern seems to be about its reference to the wall, and really what we're saying is that you hold the cover in your hand. It's a physical device. You can look at one side and say this is the back. This is the back of the cover. That's the back plate. Your front and your back.  Like you're standing in front of me. You've got a front and you've got a back. Exactly, and that's what gives meaning to the word back plate, and we're not saying that you can just stick another decorative plate right onto it and somehow that avoids infringement. That's not what the defendant did. The back plate for the defendant serves other purposes. It's not just simply a decorative thing, and giving meaning to the term back, that's what the claim construction is supposed to do. What they have done is instead of trying to see if you have a back plate, they can't tell if you have a back plate until they take the thing apart, and then if it has the prongs on the back plate, then suddenly that's the back plate. But before they take it apart, they can't tell you if it's the back plate under the patent. And we're saying you can tell it's the back plate because it's the rear. Then you open it up and you see are the prongs there, and if they're not, then it's a back plate. It's just not a back plate that has the additional limitations of Claim 9 on it, which is the requirement of the claim. So what they're trying to say is you're looking for really a prong plate. Any plate that's behind the front plate is the back plate to them, but really they're saying it's the prong plate. Now the prongs are sort of leading. And I would just say this concern about the design arounds, the inventor himself in his specification says, furthermore, it should be understood that the appended claims do not necessarily comprise the broadest scope of the invention, which the applicant is entitled to claim. I want you to go back to back plate. So, I mean, there's a cover. A cover has to have a front plate and a back plate. This is a comprising claim. Cover can have 5,000 more plates and still infringe this claim. If those plates are internal. But the back part, if it's, if the. I don't know that I totally agree with that. A back plate, and you go on to say what it means, comprising at least one set of electrical prongs, including a hot prong. I mean, you've defined what a back plate is in your claim. I disagree to this point. Your claim, I understand. That the term back plate is a component of cover. Then the claim further comprises back plate to include some additional limitations, but it's serving two parts.  I don't disagree with what you just said, but I'm not sure that back plate on its face. Has to be the thing on the back of the cover, as opposed to on the back of the front plate. Well, you understand my distinction. I don't in that you're, you're using the word back in a, in a, in a, in a way that doesn't make sense. It's the back of the front. It's the back of the cover. It's the back of the cover. Like the back of the car is the trunk and the fender and all that.  Okay. I got it. Thank you. Thank you. Okay. I thank both counsel. This case is taken under submission.